**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISON**

| | |
|---|---|
| JEFFREY VAN GINKEL<br><br>*Plaintiff*,<br>v.<br><br>KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; AND PHILIPS RS NORTH AMERICA LLC,<br><br>*Defendants*. | Case No. 4:22-cv-332<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL<br>"TAG ALONG" MDL 3014<br>WESTERN DISTRICT OF PENNSYLVANIA |

Plaintiff Jeffrey Van Ginkel ("Plaintiff" or "Plaintiff Van Ginkel") for his complaint against Defendants Koninklijke Philips N.V. ("Royal Philips"), Philips North America L.L.C. ("Philips NA"), and Philips RS North America L.L.C. ("Philips RS") (collectively, Royal Philips, Philips NA, and Philips RS are "Philips" or the "defendants"), alleges the following:

**INTRODUCTION**

1. Plaintiff brings this action on behalf of himself as a user of a Philips Respironics System I Continuous Positive Airway Pressure (CPAP) manufactured by Philips, which contains polyester-based polyurethane sound abatement foam ("PE-PUR Foam").

2. On April 26, 2021, Philips made a public announcement disclosing it had determined there were risks that the PE-PUR Foam used in certain CPAP, Bi-Level P.A.P., and

1

mechanical ventilator devices it manufactured may degrade or off-gas under certain circumstances.

3.  On June 14, 2021, Royal Philips issued a recall in the United States of its CPAP, Bi-Level P.A.P., and mechanical ventilator devices containing PE-PUR Foam because Philips had determined that (a) the PE-PUR Foam was at risk for degradation into particles that may enter the devices' pathway and be ingested or inhaled by users, and (b) the PE-PUR Foam may off-gas certain chemicals during operation.[1] Philips further disclosed in its Recall Notice that "these issues can result in serious injury which can be life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment."[2]

4.  Philips has disclosed that the absence of visible particles in the devices does not mean that PE-PUR Foam breakdown has not already begun. Philips reported that lab analysis of the degraded foam reveals the presence of harmful chemicals, including: Toluene Diamine ("T.D.A."), Toluene Diisocyanate ("TDI"), and Diethylene Glycol ("D.E.G.").[3]

5.  Prior to issuing the Recall Notice, Philips received complaints regarding the presence of black debris/particles within the airpath circuit of its devices (extending from the device outlet, humidifier, tubing, and mask). Philips also received reports of headaches, upper airway irritation, cough, chest pressure, and sinus infection from users of these devices.

6.  In its Recall Notice, Philips disclosed that the potential risks of particulate exposure to users of these devices include: irritation (skin, eye, and respiratory tract), inflammatory response, headaches, asthma, and adverse effects to other organs (*e.g.*, kidneys and liver) and toxic,

---

[1] *See* Philips Recall Notice attached hereto as Exhibit "A."
[2] *Id.*
[3] Philips Sleep and Respiratory Care Update; Clinical information for physicians, https://www.philips.com/c-dam/b2bhc/master/landing-pages/src/update/documents/philips-recall-clinical-information-for-physicians-and-providers.pdf (accessed June 27, 2021).

carcinogenic effects. The potential risks of chemical exposure due to off-gassing of PE-PUR Foam in these devices include: headache/dizziness, irritation (eyes, nose, respiratory tract, skin), hypersensitivity, nausea/vomiting, and toxic and carcinogenic effects.

7. Philips recommended that patients using the recalled CPAP and Bi-Level P.A.P. devices immediately discontinue using their devices and that patients using the recalled ventilators for life-sustaining therapy consult with their physicians regarding alternative ventilator options.

8. In March 2011, Plaintiff purchased a Philips Respironics System I CPAP device that he used nightly from March 2011 until June 2021.

9. Plaintiff Johnson received a letter from Philips advising him that his Philips' Respironics System I CPAP device was subject to a recall due to the presence of a dangerous PE-PUR Foam that could cause him to suffer from adverse health effects including, *inter alia*, cancer and organ failure. Plaintiff was advised to discontinue the use of the devices. He was also advised to verify whether his devices were subject to the recall by submitting the serial numbers for his devices to an online database Philips established. Plaintiff received confirmation that his CPAP device was subject to recall.

10. Plaintiff has now incurred substantial expenses to replace the device. In addition, Plaintiff has experienced D.M., H.T.N., DVT, and embolism during the use of the Philips' CPAP machine. Since being notified of the recall, Plaintiff has experienced anxiety concerning the potential other serious health risks he is facing from possible exposure to off-gassed or degraded PE-PUR Foam in the recalled device.

11. Plaintiff seeks to recover damages based on, *inter alia*, Philips' breach of express warranty, breach of implied warranties, misrepresentations, and omissions, in connection with its

manufacture, marketing, and sales of devices containing PE-PUR Foam. In addition, Plaintiff seeks medical monitoring damages for his use of Philips' device identified in the Recall Notice.

**PARTIES**

12. Plaintiff Jeffrey Van Ginkel is a citizen of Polk County, Iowa.

13. Defendant Royal Philips is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands. Royal Philips is the parent company of the Philips Group of healthcare technology businesses, including Connected Care businesses focusing on Sleep & Respiratory Care. Royal Philips holds directly or indirectly 100% of its subsidiaries, Philips NA and Philips RS.[4] Upon information and belief, Royal Philips controls Philips NA and Philips RS in the manufacturing, selling, distributing, and supplying of the recalled CPAP, Bi-Level P.A.P., and mechanical ventilator devices.[5]

14. Defendant Philips NA is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips NA is a wholly-owned subsidiary of Royal Philips.

15. Defendant Philips RS is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15206. Philips RS is a wholly-owned subsidiary of Royal Philips. Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics"). Royal Philips acquired Respironics in 2008.[6]

---

[4] Philips 2020 annual filing with the SEC, fn. 8, https://www.sec.gov/Archives/edgar/data/313216/000031321621000008/phg-exhibit8.htm (accessed June 30, 2021).
[5] Philips 2020 annual filing with the SEC, https://www.sec.gov/ix?doc=/Archives/edgar/data/0000313216/000031321621000008/phg-20201231.htm (accessed June 30, 2021).
[6] Philips announces completion of tender offer to acquire Respironics, WEB WIRE, https://www.webwire.com/ViewPressRel.asp?aId=61199 (accessed June 27, 2021).

**JURISDICTION AND VENUE**

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy as to the Plaintiff exceeds $75,000, exclusive of interest and costs and because Defendant is incorporated and has its principal places of business in states other than the state in which the named Plaintiff resides.

17.     This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred, in part in the Southern District of Iowa.

19.     The Court has personal jurisdiction over the Defendants because Defendants conduct substantial business in this District, and the events giving rise to Plaintiff's claims arise out of and relate to Defendants' contacts with this District. Defendants' affiliations with this District are so continuous and systematic as to render them essential at home in the forum State. Further, Defendants have transacted business, maintained substantial contacts, purposefully targeted consumers and medical professionals for sales of its devices, and/or committed overt acts in furtherance of the unlawful acts alleged in this Defendants have been directed at, targeted, and have had the effect of causing injury to persons residing in, located in, or doing business in this District, as well as throughout the United States.

**FACTUAL BACKGROUND**

    **I.**     **Continuous Positive Airway Pressure Therapy**

20.     Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea. CPAP therapy typically involves the use of a hose

and a nasal or facemask device that delivers constant and steady air pressure to an individual's throat to help individuals breathe.

21. Sleep apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle. These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses. The airway collapse prevents oxygen from reaching the individual's lungs which can cause a buildup of carbon dioxide. If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from sleep so that the individual's airway can reopen. Often these interruptions are so brief that the individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance, and long-term health. CPAP therapy helps treat sleep apnea by preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

## SUBSTANTIVE ALLEGATIONS

22. Philips developed, marketed, and sold a variety of CPAP and Bi-Level P.A.P. respirator devices and mechanical ventilators under its "Sleep & Respiratory Care" segment of its business designed to assist individuals with a number of sleep, breathing, and respiratory conditions, including obstructive sleep apnea, central sleep apnea, complex sleep apnea syndrome, and Chronic Obstructive Pulmonary Disease (COPD), as well as to assist those individuals requiring invasive and non-invasive ventilators for acute and sub-acute hospital environments. Philips' CPAP and Bi-Level P.A.P. respirator devices and its mechanical ventilators typically cost several hundred, if not thousands of dollars. Philips has sold millions of these devices in the United States.

**II.     Philips Sleep & Respiratory Care Devices Endangered Users**

23.     On April 26, 2021, in its Quarterly Report for Q1 2021, Philips disclosed for the first time, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR Foam Philips used to minimize noise in several CPAP and Bi-Level P.A.P. respirators and mechanical ventilators posed health risks to its users. Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone [], and certain environmental conditions involving high humidity and temperature."[7]

24.     Seven weeks later, on June 14, 2021, Philips announced a recall of numerous models of CPAP and Bi-Level P.A.P. devices, as well as a variety of its mechanical ventilators "to address identified potential health risks related to the polyester-based polyurethane (PE-PUR) sound abatement foam component in these devices."[8] Specifically, Philip announced that it had determined that the "PE-PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals."[9] In total, Philips announced that "[b]etween 3 million and 4 million" devices are targeted in the recall.[10]

---

[7] First Quarter Results, PHILIPS (Apr. 26, 2021), https://www.results.philips.com/publications/q121/downloads/pdf/en/philips-first-quarter-results-2021-report.pdf (accessed June 27, 2021).

[8] *Philips issues recall notification\* to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices,* PHILIPS (June 14, 2021), https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 27, 2021).

[9] *Id.*

[10] Associated Press, *Philips recalls ventilators, sleep apnea machines due to health risks,* NBC NEWS, https://www.nbcnews.com/business/consumer/philips-recalls-ventilators-sleep-apnea-machines-due-to-health-risks-n1270725 (accessed June 27, 2021).

25. The list of the devices recalled by Philips (the "Recalled Devices") include:

| Philips CPAP and Bi-Level P.A.P. Devices Manufactured Before April 26, 2021, Subject to Recall[11] | |
|---|---|
| **Device Name/Model Type** | **Type** |
| E30 (Emergency Use Authorization) | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| DreamStation A.S.V. | Continuous Ventilator, Non-life Supporting |
| DreamStation St, AVAPS | |
| SystemOne ASV4 | |
| C Series A.S.V. | |
| C Series S/T and AVAPS | |
| OmniLab Advanced Plus | |
| SystemOne (Q Series) | Non-continuous Ventilator |
| DreamStation | |
| DreamStation GO | |
| Dorma 400 | |
| Dorma 500 | |
| REMStar SE Auto | |

26. According to Philips, the PE-PUR Foam used in Recalled Devices puts users at risk of suffering from: "[i]irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (*e.g.,* kidneys and liver) and toxic, carcinogenic affects."[12]

---

[11] Recall Notice (Exhibit "A" hereto); *see also* Medical Device recall notification (U.S. only) / field safety notice (International Markets), PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 27, 2021); Royal Philips Update on the recall notification, https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and respiratory-care-devices.html (accessed June 27, 2021).
[12] *Id.*

27. Philips reported to physicians that PE-PUR Foam particles "may cause irritation and airway inflammation, and this may be particularly important for patients with underlying lung diseases or reduced cardiopulmonary reserve."[13]

28. Further, Philips reported that "based on lab testing and evaluations, it may be possible that these potential health risks could result in a wide range of potential patient impact, from transient potential injuries, symptoms, and complications, as well as possible serious injury which can be life-threatening or cause permanent impairment or require medical intervention to preclude permanent impairment."[14]

29. Philips announced that it has received reports of specific complaints from users of Recalled Devices who suffered from "headache[s], upper airway irritation, cough, chest pressure, and sinus infection."[15]

### III.  The Health Risks Associated with Use of the Recalled Devices Renders Them Worthless

30. As a result of the health risks associated with the use of the Recalled Devices, together with Defendants' concealment of these risks from the date they were first reported to Defendants or discovered by Defendants through April 26, 2021, the Recalled Devices have been rendered completely worthless or, at the very least, have been substantially diminished in value.

31. The information described above, including the now-known health risks of Philips CPAP devices, Bi-Level P.A.P. devices, and mechanical ventilators, the recall, and the medical warnings and advice issued by Philips, have rendered the Recalled Devices worthless to patients with sleep apnea and respiratory conditions. Individuals not using life-supporting ventilators

---

[13] Philips *Sleep and Respiratory Care Update- Clinical information for physicians,* June 14, 2021, Philips-recall-clinical-information-for-physicians-and-providers.pdf (accessed June 27, 2021).
[14] *Id.*
[15] Recall Notice (Exhibit A hereto).

9

must immediately discontinue their use of the Recalled Devices or face serious health risks as grave as organ failure or cancer.

32.     Recognizing this, Philips issued the following advice to patients using any of the Recalled Devices:

- **"For patients using Bi-Level P.A.P. and CPAP devices:** Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."[16]

- "**For patients using life-sustaining mechanical ventilator devices: DO NOT discontinue or alter prescribed therapy without consulting physicians to determine appropriate next steps."**[17]

### IV.     Philips Unreasonably Delayed its Recall

33.     At no time prior to its Regulatory Update on April 26, 2021, did Philips disclose to purchasers or users of the Recalled Devices that the PE-PUR Foam contained therein may off-gas or degrade upon use. Similarly, prior to the Update, Philips did not disclose any health risks associated with use of the Recalled Devices.

34.     Defendants have not disclosed when they first discovered or received reports from users of their Sleep & Respiratory Care devices "regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)."[18] At a minimum, as a result of user reports, Defendants were aware of the off-gassing and degradation of the PE-PUR Foam used in the Recalled Devices at some point prior to the recall, yet

---

[16] Medical Device recall notification (U.S. only) / field safety notice (International Markets), PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 27, 2021) (Questions and answers) (emphasis in original).
[17] *Id.*
[18] Recall Notice (Exhibit "A" hereto).

continued to manufacture and sell the Recalled Devices with such awareness. During this period, Defendants unreasonably and unjustly profited from the manufacture and sale of the Recalled Devices and unreasonably put users of the Recalled Devices at risk of development of serious adverse health effects, including organ failure and cancer.

### V.     **Plaintiff Jeffrey Van Ginkel**

35.    Plaintiff Jeffrey Van Ginkel is a resident and citizen of Des Moines, Polk County, Iowa.

36.    Plaintiff Van Ginkel purchased one of the Recalled Devices, a Philips Respironics System I CPAP device, prior to June 14, 2021.

37.    The manuals accompanying Plaintiff's Respironics System I CPAP device did not contain any language or warnings of health risks associated with use of the device, including irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (*e.g.,* kidneys and liver) and toxic carcinogenic effects. Had Defendants informed Plaintiff of these risks, he would not have purchased or used the Recalled Device.

38.    Without knowing of the health risks associated with use of the Recalled Devices, Plaintiff used his Recalled Device regularly to treat sleep apnea until learning on June 26, 2021, that the devices were recalled.

39.    As a result of the health risks associated with continued use of these devices and the recall, Plaintiff's Respironics System I CPAP device is now worthless. Plaintiff was forced to replace the device at considerable cost.

## TOLLING AND ESTOPPEL

### VI.  Discovery Rule Tolling

40.     Plaintiff had no way of knowing about Philips' conduct with respect to the health risks associated with the use of the Recalled Devices.

41.     Plaintiff, through the exercise of reasonable care, could have discovered the conduct by Philips alleged herein. Further, Plaintiff did not discover and did not know of facts that would have caused a reasonable person to suspect that Philips was engaged in the conduct alleged herein.

42.     For these reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiff.

### VII.  Fraudulent Concealment Tolling

43.     By failing to provide immediate notice of the adverse health effects associated with continued use of the Recalled Devices, Philips concealed its conduct, and the existence of the claims asserted herein from Plaintiff.

44.     Upon information and belief, Philips intended its acts to conceal the facts and claims from Plaintiff. Plaintiff was unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or members of the Class or Subclass should be tolled.

## FIRST CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

45.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46.     Philips are merchants engaging in the sale of goods to Plaintiff.

47. There was a sale of goods from Philips to Plaintiff.

48. At all times mentioned herein, Philips manufactured or supplied the Recalled Devices, and prior to the time, the Recalled Devices were purchased by Plaintiff. Philips impliedly warranted to them that the Recalled Devices were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact and omissions made on the Recalled Devices' labels and packaging, including that the Recalled Devices were safe and appropriate for human use. Plaintiff relief on Philips' promises and affirmations of fact and omissions when they purchased and used the Recalled Devices.

49. Contrary to these representations and warranties, the Recalled Devices were not fit for their ordinary use and did not conform to Philips' affirmations of fact and promises and omissions because use of the Recalled Devices is accompanied by the risk of adverse health effects, which does not conform to the labels and packaging of these devices.

50. Philips breached its implied warranties by selling Recalled Devices that failed to conform to the promises or affirmations of fact made on the packaging or label, as use of each Recalled Devices was accompanied by the risk of developing adverse health effects that do not conform to the packaging or label.

51. Philips was on notice of this breach, as it was made aware of the adverse health effects accompanying use of the Recalled Devices through user reports submitted to Philips and through lab testing.

52. Philips impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Recalled Devices were natural and suitable for use to treat health conditions and made no mention of the attendant health risks associated with use of the Recalled Devices.

53. As a direct and proximate result of Philips' conduct, Plaintiff has suffered actual damages in that the Recalled Device he purchased is worth less than the price he paid and which he would not have purchased at all had he known of the attendant health risks associated with the use of the Recalled Device.

54. Plaintiff seeks actual damages, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their implied warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

### NEGLIGENCE

55. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

56. Philips had a duty to Plaintiff to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of the Recalled Devices.

57. Philips breached its duty to Plaintiff by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove the Recalled Devices from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Devices.

58. Defendants' breach of duty was the actual cause of the Plaintiff's injuries.

59. As a direct and proximate result of Philips' conduct, Plaintiff has suffered actual damages as a result of the negligent act.

60. Plaintiff seeks actual damages, attorneys' fees, costs, and any other just and proper relief available.

## **THIRD CLAIM FOR RELIEF**

### **DUTY TO WARN**

61.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

62.     At all relevant times, the Defendants knew or should have known of the danger in light of the generally recognized and prevailing best scientific knowledge yet failed to provide adequate warning to users or consumers.

63.     Defendants have reported that users of the Recalled Devices face risks of serious injury from the degradation of PE-PUR Foam contained in the Recalled Devices. Degradation of PE-PUR Foam may be caused by exposure to chemical emissions from the foam material, high heat, and high humidity environments in certain regions, and cleaning methods such as ozone may accelerate potential degradation.

64.     When PE-PUR Foam degrades into particles that may enter the device's pathway and be ingested or inhaled by users of the devices, users face significantly increased risks of serious injury that can be life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment. The potential risks of degraded foam exposure include: irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (*e.g.,* kidneys and liver), and toxic carcinogenic effects.

65.      The off-gassing of chemicals from the PE-PUR Foam contained in the Recalled Devices poses risks of serious injury that can be life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment. The potential risks of exposure to off-gassing from PE-PUR Foam include: headache/dizziness, irritation (eyes, nose, respiratory tract, skin), hypersensitivity, nausea/vomiting, toxic and carcinogenic effects.

66.     The absence of visible particles does not mean that PE-PUR Foam breakdown has not already begun. Philips has reported that lab analysis of the degraded foam reveals the presence of harmful chemicals, including: T.D.A., TDI, and D.E.G.[19] TDI is a powerful irritant to the mucous membranes of the eyes and gastrointestinal and respiratory tracts,[20] and has been reported to cause Occupational Asthma.[21] Exposure to T.D.A. may result in ataxia, tachycardia, nausea, vomiting, convulsions, and respiratory depression. [22] T.D.A. can cause chemical cyanosis (*i.e.,* bluish discoloration of the skin) by converting hemoglobin to methemoglobin. This compound can also cause fatty degeneration of the liver.[23] T.D.A. and TDI are potential carcinogens.[24] Repeated exposure to D.E.G. has been associated with damage to the kidneys and adrenal failure.[25]

---

[19] Philips Sleep and Respiratory Care Update; Clinical information for physicians, https://www.philips.com/c-dam/b2bhc/master/landing-pages/src/update/documents/philips-recall-clinical-information-for-physicians-and-providers.pdf (accessed June 27, 2021).

[20] The National Institute for Occupational Safety and Health (NIOSH) Current Intelligence Bulletin 53, *Toluene Diisocyanate (TDI) and Toluenediamine (TDA): Evidence of Carcinogenicity,* DHHS (NIOSH) Publication Number 90-101 (Dec. 1989); *see also* Gunnar Skarping, *et al., Biological monitoring of isocyanates and related amines: Teset chamber exposure of humans to toluene diisocyanate*, Dep't of Occupational and Environmental Medicine, University Hospital, S-221 85 Lund, Sweden (1990); https://greenfuture.io/sustainable-living/spray-polyurethan-foam-toxic/.

[21] Bernstein, David I, *Occupational asthma: Definitions, epidemiology, causes, and risk factors,* Wolters Kluwer, UpToDate.com (accessed June 30, 2021).

[22] NIOSH, *Toluene Diisocyanate (TDI0 and Toluenediamine (TDA): Evidence of Carcinogenicity; see also* Skarping, *Biological monitoring of isocyanates and related amines: Test chamber exposure of humans to toluene diisocyanate;* https://greenfuture.io/sustainable-living/spray-polyurethane-foam-toxic/.

[23] NIOSH, *Toluene Diisocyanate (TDI) and Toluenediamine (TDA): Evidence of Carcinogenicity.*

[24] *Id.* ("The excess cancer risk for workers exposed to TDI and TDA has not yet been quantified, but the probability of developing cancer should be decreased by minimizing exposure.").

[25] Greg M. Landry, *Diethylene glycol-induced toxicities show marked threshold dose response in rats,* Toxicology and Applied Pharmacology 282 (2015) 244-251 ("DEG has recently been involved in several mass epidemics of renal failure and death world-wide (O'Brien et al., 1998; Schier etal., 2013). DEG poisoning clinically manifests in metabolic acidosis, hepatotoxicity, renal failure, and peripheral neuropathy, with the hallmark being acute renal failure involving proximal tubule cell necrosis and cortical degeneration (Schep et al., 2009)"); Cohen, Jeffrey A., *Demyelinating Diseases of the Peripheral Nerves,* Nerves and Nerve Injuries (2015) ("When consumed, DEG causes severe systemic and neurologic complications, including coma, seizures, peripheral neuropathy, and hepatorenal failure.").

67. As a direct and proximate result of Defendants' conduct, Plaintiff has been exposed to substantially increased risks of serious injury from off-gassing and/or degradation of PE-PUR Foam in the Recalled Devices, which is beyond normal background levels of risk.

68. As a direct and proximate result of Defendants' conduct, Plaintiff has a significantly increased risk of suffering serious injury or contracting a serious latent disease and suffering further injury at an unknown date in the future. Such injuries include cancer and organ failure, among others currently unknown or just being discovered.

69. Existing medical research indicated that exposure to TDI, T.D.A., and D.E.G., which Philips has found to exist in off-gassed or degraded PE-PUR Foam, can cause serious, life-threatening, and permanent injuries. Philips has received reports from users of the Recalled Devices of headache, upper airway irritation, cough, chest pressure, and sinus infection. The exposure to the defects inherent in the Recalled Devices has occurred for users, such as Plaintiff, but the full extent of the injuries may not manifest until later in the Plaintiff's life. Thus, because of Defendants' conduct, it is reasonably necessary that Plaintiff be placed under periodic diagnostic testing beyond that normally recommended in the absence of use of the Recalled Devices.

70. Plaintiff demands judgment against Defendants for failure to warn to diagnose injuries caused by the Recalled Devices at an earlier date to allow for timely treatment and prevention of exacerbation of injuries, together with interest, costs of suit, attorney's fees, and all such other relief as the Court deems proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Philips as to each and every count, including:

A. An order declaring that Philips' actions constitute: (i) breach of the implied warranty of merchantability; (ii) negligence; (iii) failure to warn, and that Philips is liable to Plaintiff as described herein for damages arising therefrom;

B. A judgment awarding Plaintiff all appropriate damages in an amount to be determined at trial;

C. A judgment awarding Plaintiff and the prejudgment and post-judgment interest, as permitted by law;

D. A judgment awarding Plaintiff the costs and fees, including attorneys' fees, as permitted by law; and

E. Grant such other legal, equitable, or further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

DATED: September 7, 2022                                Respectfully submitted,


/s/ *Danny L. Cornell*
Danny L. Cornell     #AT0001765
CORNELL LAW
111 East Washington Street
P.O. Box 27
Mt. Pleasant, IA 52641
(319) 219-2800 – Telephone
(319) 385-2148 – Facsimile
danny@cornellinjurylaw.com

                                                **LARRY HELVEY LAW FIRM**
By: /s/Larry D. Helvey, M.D., J.D.
Larry D. Helvey  AT0003424
2735 First Avenue S.E., Suite 101
Cedar Rapids, IA 52402
Telephone:  319-362-0421
Facsimile:  319-362-3496
Email:  lhelvey@helveylaw.com